UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VERIZON NEW ENGLAND, d/b/a<br>VERIZON MAINE,<br><br>            Plaintiff,<br><br>v.<br><br>MAINE PUBLIC UTILITIES<br>COMMISSION, et al.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)  Docket No. 05-cv-53-B-S<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER ON MOTION TO INTERVENE

SINGAL, Chief District Judge

Before the Court is the Motion to Intervene (Docket # 10) by Biddeford Internet Corporation, Skowhegan Online, Inc., and Cornerstone Communications, LLC. The movants seek intervention of right under Rule 24(a) of the Federal Rules of Civil Procedure in this case between Plaintiff Verizon New England ("Verizon") and Defendant Maine Public Utilities Commission ("MPUC"). Verizon, which is seeking declaratory and injunctive relief from two orders of the MPUC in the underlying case, opposes the Motion to Intervene. For the reasons stated below the Court DENIES WITHOUT PREJUDICE the Motion to Intervene.

### I. BACKGROUND

This federal preemption case involves a potential conflict between provisions of the Telecommunications Act of 1996 (the "1996 Act") and two orders of the MPUC. The 1996 Act fundamentally overhauled the market for local telephone service by requiring

local telephone companies — which until the 1996 Act's passage were usually the sole providers of local phone service in their service areas — to "unbundle" their telephone networks. This unbundling requirement essentially opened the doors to competition in local telephone service. It allowed would-be competitors to use parts of the local telephone company's infrastructure to offer competing local service plans. The phone companies subject to the unbundling requirements are known as incumbent local exchange carriers ("ILECs") and the competitors are known as competitive local exchange carriers ("CLECs"). In this case, Plaintiff Verizon is an ILEC and the prospective intervenors are CLECs.

Under the 1996 Act, access to some, but not all, parts of an ILEC's network infrastructure must be offered to CLECs at regulated below-market rates. The 1996 Act leaves it to the Federal Communications Commission ("FCC"), guided by certain standards, to determine whether a particular part of an ILEC's infrastructure should be offered to CLECs at these below-market rates. See 47 U.S.C. § 251(d)(2). According to Verizon's Complaint, among those parts of the telephone network infrastructure that the FCC has ruled need not be offered to CLECs at below-market rates is that part of the telephone network that enables broadband internet service through telephone lines, commonly known as DSL.

Verizon's Complaint alleges that the MPUC issued two orders that effectively required Verizon to continue to provide CLECs with access to portions of its network determined by the FCC to be outside the scope of the 1996 Act's unbundling requirements. Verizon argues that these MPUC orders are "inconsistent with decisions of the FCC and the plain language of the 1996 Act, and thus are contrary to federal law and preempted."

2

(Compl. (Docket # 1) ¶ 69.)  Verizon seeks declaratory and injunctive relief to prevent the MPUC from enforcing its orders.

The movants are three CLECs that have agreements with Verizon to utilize portions of its network under the 1996 Act's unbundling requirements.  These parties were active participants in the proceedings before the MPUC which led to the orders now challenged by Verizon.  The movants successfully urged the MPUC to require Verizon to continue to offer CLECs certain parts of its network at below-market prices.  The movants now claim that they should be permitted to intervene in this case in which Verizon seeks to enjoin enforcement of the very orders that they fought to obtain from the MPUC.

## II. ANALYSIS

A party that wishes to intervene in a civil action under Rule 24(a)(2) of the Federal Rules of Civil Procedure must satisfy four requirements:

> (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest.

Public Serv. Co. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998).  Intervention is proper only if all four requirements are satisfied.  Id.  Verizon claims that the movants have demonstrated neither a sufficient interest in the proceedings nor that Defendant inadequately represents their interests.

### A. Interests of the Prospective Intervenors

The First Circuit has not adopted a categorical approach in determining whether a prospective intervenor has a sufficient "interest relating to the property or transaction," stating that "there is no precise and authoritative definition of the interest required to sustain a right to intervene." Conservation Law Found., Inc. v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992). However, "the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants" and "the interest must be direct, not contingent." Id. (citing Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989)). While "potential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry, . . . an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." Patch, 136 F.3d at 205 (1st Cir. 1998). Thus, the First Circuit found in Patch that, in the context of a dispute over electricity deregulation, an economic interest in lower electric rates that cannot be differentiated from that of "every electricity consumer" and "every person who does business with an electricity consumer" does not create a sufficient interest in the "property or transaction" to allow intervention. Id.

However, this case is distinguishable from Patch in that the prospective intervenors are claiming to be direct and intended beneficiaries of a regulatory scheme designed to allow them to compete with Plaintiff by granting them access to Plaintiff's network. Furthermore, they currently have contractual relationships with Plaintiff structured in reliance on this regulatory scheme. Therefore, rather than being undifferentiated consumers of Verizon's services with a mere contingent interest in paying lower prices, the CLECs have direct contractual and competitive interests in the availability of Verizon's

4

unbundled network parts. If Verizon successfully obtains an injunction against the MPUC, the prospective intervenors could be effectively denied network services to which they currently enjoy a right to access. Based on these facts, it is clear that the prospective intervenors have satisfied prongs two and three of the four-part test.[1]

### B. Adequacy of Representation

While the movants have a demonstrated valid interest potentially threatened by the disposition of this lawsuit, the Court is not convinced that the movants have made "a satisfactory showing that existing parties inadequately represent [their] interest." Patch, 136 F.3d at 204. "[W]here the goals of the applicants are the same as those as the plaintiff or defendant," there is a presumption of adequate representation that must be rebutted by the prospective intervenor. Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999). Furthermore, failure of a party to raise a particular legal argument favored by the prospective intervenor does not establish inadequate representation per se. Id. at 112. The movants have not demonstrated that the goals of the MPUC differ from their own, and they have not rebutted the resulting presumption of adequate representation.

The movants argue that the goals of the MPUC and the CLECs diverge insofar as the MPUC must "balance the interests of the various public utilities it regulates" while the CLECs must "advocate forcefully for as much access as possible to those portions of Verizon's network they believe to be necessary and useful in providing competitive services." (Reply Mem. to Pl.'s Opp'n to Mot. to Intervene (Docket # 12) at 3–4.) While this may have been true in the original hearings before the MPUC which produced the

---

[1] The first prong of the test, timeliness, is not in dispute.

orders challenged by Verizon, the movants do not explain why this would be the case in the current litigation. The MPUC's balancing of interests cited by the prospective intervenors is already embodied in the two MPUC orders at the heart of this litigation. The Court sees no reason to assume that the MPUC intends to revisit those policy determinations during the course of this litigation. Indeed, it is difficult to see how the MPUC's policy (as opposed to legal) rationale for its orders would be directly relevant to Verizon's claims that the orders are preempted by federal law. Therefore, the Court can only assume that the MPUC shares the movants' goal of defending the legality of the challenged orders to the full extent of the law. Since the movants offer no evidence rebutting the resulting presumption of adequate representation, their motion to intervene must be DENIED.

### C. Amicus Curiae Status

Movants argue in the alternative that if the Court denies their Motion to Intervene it should grant them "amicus curiae plus" status instead. See Daggett v. Webster, 190 F.R.D. 12, 14–15 (D. Me. 1999); Alliance of Auto. Mfrs. v. Gwadowsky, 297 F. Supp. 2d 305, 308 (D. Me. 2003). Although the Federal Rules of Civil Procedure are silent on the standard for appointing amicus curiae, "the district court retains the inherent authority to appoint amicus curiae to assist it in a proceeding." Alliance of Auto. Mfrs., 297 F. Supp. 2d at 306 (quotations omitted). Furthermore, the Court has discretion to determine "the fact, extent, and the manner of participation by the amicus." Id. at 307.

In this case, the Court has determined that some participation by the intervenors as amicus curiae could be beneficial to the Court in this matter, given the likely difference in perspective between competitor and regulator. However, the Court is also concerned that

the expansive participation sought by the movants as "amicus curiae plus" — the movants apparently wish to call their own witnesses as well as cross-examining the parties' witnesses — would seriously compromise judicial efficiency. Therefore, the Court will allow the movants to participate as traditional amicus curiae only. They may file memoranda and briefs on motions before the Court. The movants may also participate in oral arguments on dispositive motions, if any. Finally, movants are granted the right to receive notice and service of all documents and events. However, to the extent that the movants seek additional powers, including the right to call witness, cross-examine witnesses, or conduct discovery, those requests are DENIED.

### III. CONCLUSION

For the reasons stated above, the Motion to Intervene (Docket # 10) is DENIED WTIHOUT PREJUDICE. Movants may renew their Motion to Intervene if, during the course of the litigation, it becomes clear that the MPUC is in fact failing to adequately represent their interests. The Court GRANTS the movants traditional amicus curiae status. In addition, the Court ORDERS that the movants receive service of all documents and notice of all events in this case. However, their request for "amicus curiae plus" status is otherwise DENIED.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 20th day of July, 2005.