UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| VERIZON NEW ENGLAND INC.<br>d/b/a VERIZON MAINE,<br><br>　　　　　　Plaintiff<br><br>v.<br><br>MAINE PUBLIC UTILITIES COMMISSION<br>*et al.*,<br><br>　　　　　　Defendants | Civil No. 05-53-B-C |

Gene Carter, Senior District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS**

This case is before the Court on the Motion of the Plaintiff, Verizon New England Inc. d/b/a Verizon Maine for Summary Judgment or, Alternatively, for Judgment on the Pleadings (Docket Item No. 74) and on Defendants Maine Public Utilities Commission and the Commissioners of the Maine Public Utilities Commission's Motions for Judgment on the Pleadings (Docket Item No. 71)[1] and for Summary Judgment (Docket Item No. 82). Verizon Maine ("Verizon") seeks an order declaring that the Maine Public Utilities Commission's ("PUC") September 3, 2004, March 17, 2005, and September 13, 2005 Orders, and other Orders in collateral dockets, are unlawful. The Court previously denied Verizon's Motion for Preliminary Injunctive relief. Docket Item No. 70.

---

[1] Because of the disposition of Defendants' Motion for Summary Judgment, it is unnecessary for the Court to address Defendants' Motion for Judgment on the Pleadings.

## I. FACTS[2]

Verizon is an "incumbent local exchange carrier" ("ILEC") within the meaning of the 1996 Telecommunications Act ("TCA"). *See* 47 U.S.C. § 251(h)(1). Verizon, as successor to New England Telephone and Telegraph Company, is also a Bell Operating Company ("BOC") within the meaning of the TCA. *See* 47 U.S.C. § 153(4). In a letter dated March 1, 2002, the PUC advised Verizon that as a condition of its support of Verizon's Application to the FCC for permission to enter the InterLATA long distance market in Maine, it would require a commitment by Verizon to, *inter alia,* file a wholesale tariff for the Commission's review and approval. In a letter dated March 4, 2002, Verizon responded to the Commission's letter by committing to meet all of the PUC's conditions set forth in the March 1, 2002 letter, including the requirement that it file a wholesale tariff for the Commission's review and approval. Verizon filed a proposed wholesale tariff covering Verizon's network interconnection, unbundling, and resale obligations under § 251 with the PUC on November 1, 2002.

On September 3, 2004, the PUC issued its first order in Verizon's Wholesale Tariff Proceeding finding that Verizon's agreement to file a "wholesale tariff" included all of Verizon's wholesale obligations, both those under § 251 as well as those under § 271 of the Act. *See VERIZON MAINE, Proposed Schedules, Terms, Conditions and Rates for Unbundled Network Elements and Interconnection (PUC 20) and Resold Services (PUC 21)*, Order-Part II, Docket No. 2002-682 (Me. P.U.C. Sept. 3, 2004) at 12. Verizon's proposed tariff did not include rates for § 271 unbundled network elements

---

[2] Additional background concerning this dispute may be found in the Court's Order Denying Plaintiff's Motion for Preliminary Injunction. *Verizon New England, Inc. v. Maine Public Utilities Com'n*, 403 F. Supp. 2d 96 (D. Me. 2005).

("UNEs").  With regard to the pricing of Verizon's wholesale offerings, the PUC found that until Verizon submitted and the PUC approved tariffs for § 271 UNEs, Verizon must continue to provide § 271 UNEs at TELRIC rates.[3]  The PUC adopted the previously-approved TELRIC rates for § 271 UNEs as a temporary measure until Verizon filed a tariff proposing rates which used the FCC's "just and reasonable" standard under §§ 201 and 202.  *Id*.

In February 2005, after the FCC issued the Triennial Review Remand Order ("TRRO") further modifying the ILECs' unbundling requirements pursuant to § 251, additional disputes arose between Verizon and the CLECs regarding Verizon's obligations to provide UNEs in Maine and resulted in supplemental filings at the PUC by Verizon and the CLECs.  *Triennial Review Remand Order, Unbundled Access to Network Elements*, Order on Remand, WC Docket No. 04-313; CC Docket No. 01-338, 20 FCC Rcd 2533 (2005).  On March 17, 2005, the PUC issued an order denying the CLECs' requested relief from the TRRO.  *See VERIZON MAINE*, *Proposed Schedules, Terms, Conditions and Rates for Unbundled Network Elements and Interconnection (PUC 20) and Resold Services (PUC 21)*, Order, Docket No. 2002-682 (Me. P.U.C. March 17, 2005).  In addition, the PUC reminded Verizon that it remained obligated to comply with the September 3, 2004 order and encouraged the parties to bring any disagreements concerning which UNEs qualify as § 271 UNEs to the commission.  Finally, on September 13, 2005, the PUC issued an order addressing the current legal status of each of the UNEs appearing on a joint matrix submitted by the parties in September 2004.  *See*

---

[3] The PUC had previously adopted specific TELRIC rates for Verizon's § 251 UNEs in Docket No. 1997-505.  Investigation Into Total Long Run Incremental Cost (TELRIC) Cost Studies and Pricing for Unbundled Network Elements, Docket No. 1997-505, Order (Feb. 12, 2002) (TELRIC Order).

*VERIZON MAINE, Proposed Schedules, Terms, Conditions and Rates for Unbundled Network Elements and Interconnection (PUC 20) and Resold Services (PUC 21)*, Order, Docket No. 2002-682 (Me. P.U.C. Sept. 13, 2005) (hereinafter "September 13, 2005 Order"). The PUC found that it had "authority to make such determinations, absent an order from the FCC making specific contrary findings, under sections 251, 252 and 271 of the TelAct and under the terms of Verizon's commitment to file a wholesale tariff in our 271 Proceeding", and that it was "acting within [its] authority under both state and federal law." *Id*. at 6. Additionally, the PUC purported to resolve a dispute between Verizon and Biddeford Internet Corporation d/b/a Great Works Internet ("GWI"), determining that their interconnection agreement required Verizon to provide GWI with § 271 elements at the rates set by the PUC.

Verizon contends that these orders are unlawful for four reasons: (1) the PUC lacks authority to set rates for elements required by § 271; (2) federal law preempts the PUC's requirement that elements required by § 271 be provided at TELRIC rates on a temporary basis; (3) the PUC erroneously interpreted § 271 to include elements not covered by that section; and (4) the PUC erroneously interpreted the interconnection agreement to require the provision of elements required by § 271 at rates set by the PUC. For the reasons stated below, Verizon is unable to succeed on any of these claims, and, accordingly, Defendants are entitled to judgment as a matter of law.

## II. ANALYSIS

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In this regard, 'material' means that a

contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).  The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### A. Whether the PUC may lawfully set rates for elements required by § 271

Verizon first argues that the PUC cannot lawfully set rates for elements required by § 271.[4]  The resolution of this matter, Verizon contends, turns upon whether

---

[4] At times throughout its brief, Verizon characterizes the PUC's Order as regulating the conditions BOCs must satisfy to provide long-distance service.  This characterization, the Court thinks, is somewhat

"Congress *conferred on* state commissions the authority to regulate and enforce the Section 271 obligations." Plaintiff's Motion for Summary Judgment at 14. The Court disagrees. Federal law is not the only source of the PUC's authority. The state of Maine "has granted broad authority to the PUC to make orders that are necessary to carry out the purpose of making modern telecommunications services more available and affordable to Maine residents upon terms that are just and reasonable."[5] *Verizon New England, Inc., v. Public Utilities Commission*, 2005 ME 64, ¶ 19, 875 A.2d 118, 123. Thus, in order to succeed on its claim, Verizon must demonstrate that this power has been preempted; an argument that Verizon fails to make here.[6] Accordingly, Verizon is unable to demonstrate that the PUC may not lawfully set rates for elements required by § 271.

### B. Whether the PUC's Decision to Require TELRIC Rates is Preempted

Verizon next argues that, even if the PUC has some authority to set rates for elements required by § 271, the PUC's decision to temporarily require TELRIC pricing for § 271 elements conflicts with federal law and is, therefore, preempted. On this issue, Verizon presents no new facts and makes no additional arguments to those it offered in seeking preliminary injunctive relief. For the reasons stated in the Court's Order Denying Preliminary Injunction, *Verizon New England,* 403 F. Supp. 2d at 102-05, the Court remains persuaded that Verizon is unable to demonstrate that the PUC's orders

---

deceiving. Although § 271 deals with the provision of long distance service, none of the PUC's orders at issue purport to limit or otherwise regulate Verizon's ability to provide long distance services.

[5] Verizon does not argue that the PUC's orders exceed its authority under state law.

[6] Although Verizon presented a preemption argument in seeking preliminary injunctive relief, it does not reassert that argument at this stage in the case. Had it done so, the Court remains convinced as indicated in the Order Denying Plaintiff's Motion for Preliminary Injunction that the PUC's authority to set rates for elements required by § 271 has not been preempted. *Verizon New England*, 403 F. Supp. 2d at 102.

requiring, on a temporary basis, the provision of § 271 elements at TELRIC rates are preempted.

### C. Whether the PUC Erroneously Interpreted Checklist Items 4 and 5

The PUC found that Checklist Item 4 requires Verizon to provide access to line sharing and dark fiber loops, and that Checklist Item 5 requires Verizon to provide access to dark fiber transport and entrance facilities. *See* Sept. 13, 2005 Order at 9-12, 23-24, 39-40, 43. Verizon argues that the PUC's interpretation of checklist items 4 and 5 is erroneous. The Court will review the PUC's determination *de novo*. *Global Naps, Inc. v. Verizon New England, Inc.,* 396 F.3d 16, 23 & n.8 (1st Cir. 2005). For the reasons stated below, the Court concludes that the elements found by the PUC to be included in checklist items 4 and 5 are required by § 271.

### 1. Checklist Item 4

Checklist Item 4 states that an ILEC must provide access to local loops as follows: "Local loop transmission from the central office to the customer's premises, unbundled from local switching or other services." 47 U.S.C. § 271 (c)(2)(B)(iv). With respect to line sharing[7], Verizon argues that it "does not provide a competitor with 'loop' transmission, because [it] provides a competitor with only a *portion* of the loop, while [it] continues to provide voice service over the loop." Plaintiff's Motion for Summary Judgment at 24. Likewise, when a competitor obtains a dark fiber loop[8], Verizon argues that it "does not provide loop 'transmission,' because dark fiber is a piece of glass,

---

[7] Line sharing allows a CLEC to use the high frequency part of a loop to provide xDSL service (broadband) while Verizon uses the low frequency portion of the loop to provide voice service to the same end user.

[8] Dark fiber consists of unused fiber within an existing fiber optic cable that has not been activated through optronics to make it capable of carrying communications services. Users of unbundled dark fiber loops furnish their own electronic equipment to activate the dark fiber strands to provide voice and data services.

incapable of transmitting anything unless and until electronics are attached to it." *Id*. However, Verizon's arguments are of no consequence since § 271 only requires that Verizon provide "access" "to local loop transmission" and not that Verizon actually provide a dedicated "loop" or actual "transmission."  47 U.S.C. § 271 (c)(2)(B)  ("Access or interconnection provided or generally offered by a Bell operating company to other telecommunications carriers meets the requirements of this subparagraph if such access and interconnection includes each of the following [checklist items.]").  Based upon the plain language of the statute, the Court agrees that checklist item 4 includes line sharing and dark fiber loops.

Verizon contends, however, that the FCC implicitly decided that these elements were not included in checklist item 4 because it did not address them in any of its pre-1999 approval orders.  *See* Memorandum Opinion and Order, *Application by Bell Atlantic New York for Authorization Under Section 271 of the Communications Act To Provide In-Region, InterLATA Service in the State of New York*, 15 FCC Rcd 3953, (rel. December 22, 1999) ("New York 271 Approval Order"), ¶ 31 & n.70.  The erroneous assumption contained in Verizon's argument is that the FCC actually considered the issue of what elements are required under Checklist Item 4 in the New York § 271 Approval Order.  Contrary to Verizon's assertion, the Court does not find that silence on the part of an agency means that the agency has considered and decided the issue.  Thus, the FCC's silence on this issue is not something to which the Court may appropriately give deference.

In support of its position, the PUC points to specific FCC decisions that it argues demonstrate that once the FCC established line sharing and dark fiber as network

8

elements in 1999, it has consistently interpreted § 271's loop requirement to include line sharing and dark fiber. For example, in the Maine 271 Approval Order, the FCC specifically stated that in order to meet Checklist Item No. 4 all technically feasible functionalities of the loop must be unbundled. *See* Memorandum Opinion and Order, *Application by Verizon New England Inc., et al. for Authorization to Provide In-Region, InterLATA Services in Maine*, 17 FCC Rcd 11659 (rel. June 19, 2002) (hereinafter "Maine 271 Approval Order"), Appendix D, ¶ 49 ("the BOC must provide access to any functionality of the loop requested by a competing carrier unless it is not technically feasible to condition the loop facility to support the particular functionality requested."); *see also* Memorandum Opinion and Order, *Application of Verizon New England Inc., For Authorization to Provide In-Region, InterLATA Services in Massachusetts*, 16 FCC Rcd 8988 (rel. April 16, 2001) (hereinafter "Massachusetts 271 Approval Order"), ¶ 163 ("On December 9, 1999 the Commission released the *Line Sharing Order* that, among other things, defined the high-frequency portion of local loops as a UNE that must be provided to requesting carriers on a nondiscriminatory basis pursuant to section 251(c)(3) of the Act and, thus, checklist items 2 and 4 of section 271."). The FCC then described how an ILEC must make line sharing available in order to meet § 271's requirements. Maine 271 Approval Order, Appendix D, ¶¶ 50-51. With respect to dark fiber loops, the FCC stated that the UNE Remand Order provided that "dark fiber and loop conditioning are among the features, functions and capabilities of the loop," thus affirming the necessity of providing access to dark fiber loops under § 271. *Id*. at ¶ 48, n.440.

    Consideration of the Maine and Massachusetts § 271 Approval Orders, along with the language of the statute, persuades the Court that Checklist Item 4 requires provision

9

of any functionality of the loop, including line sharing and dark fiber. Accordingly, Verizon is unable to demonstrate that the PUC's interpretation of Checklist Item 4 is erroneous.

## 2. Checklist Item 5

Checklist Item 5 states that an ILEC must provide access to "local transport from the trunk side of a wireline local exchange carrier switch unbundled from switching or other services." 47 U.S.C. § 271(c)(2)(B)(v). Verizon contends that neither dark fiber transport[9] nor dark fiber entrance facilities[10] fit within this description because these dark fiber elements cannot provide any transport without electronics being attached. Plaintiff's Motion for Summary Judgment at 24. As with the elements from Checklist Item 4, it is irrelevant whether dark fiber alone can transport anything as long as CLECs are provided *access* to local transport. 47 U.S.C. § 271(c)(2)(B) ("Access or interconnection provided or generally offered by a Bell operating company to other telecommunications carriers meets the requirements of this subparagraph if such *access* and interconnection includes each of the following [Checklist Items.]")(emphasis added).

Although the FCC made no specific mention of dark fiber transport in its Maine § 271 Approval Order, the PUC relies on several statements made by the FCC in other states' § 271 Approval Orders that it suggests support the PUC's view that dark fiber transport fits under the requirements of Checklist Item 5. Specifically, the Pennsylvania § 271 Approval Order refers to Verizon's compliance with Checklist Item 5 in the

---

[9] Dark fiber transport refers to unlit fiber facilities between two ILEC central offices. TRO at ¶¶ 365, 381. CLECs purchase dark fiber transport from an ILEC, add their own electronics on both ends of the route, and then use the fiber to carry traffic.

[10] Dark fiber entrance facilities connect a CLEC's collocation space in the ILEC central office to the CLEC's switch and are used to backhaul traffic from the CLEC's network to its switch.

context of requiring Verizon to file tariffs with the Pennsylvania PUC for its dark fiber offerings.  See Memorandum Opinion and Order, *Application of Verizon Pennsylvania Inc. for Authorization to Provide In-Region, InterLATA Services in the State of Pennsylvania*, 16 FCC Rcd 17419 (rel. September 19, 2001) (hereinafter "Pennsylvania 271 Approval Order") at ¶ 109 n. 372.  In addition, in the Arkansas/Missouri 271 Approval Order, the FCC stated that it was relying upon Southwest Bell's affidavit stating that it provided non-discriminatory access to dark fiber as evidence that it provided access to dedicated transport.  See Memorandum Opinion and Order, *In the Matter of Joint Application by SBC Communications Inc., To Provide In-Region, InterLATA Services in Arkansas and Missouri, Order Granting Application*, 16 FCC Rcd 20719 (rel. November 16, 2001), ¶ 116 n. 365.  Finally, in the Rhode Island § 271 Approval Order and the Vermont § 271 Approval Order, the FCC addressed arguments by a CLEC that Verizon's dark fiber offering did not meet the Checklist's requirements. See Memorandum Opinion and Order, *In the Matter of Application by Verizon New England Inc. for Authorization To Provide In-Region, InterLATA Services in Rhode Island, Order Granting Application*, 17 FCC Rcd 3300 (rel. February 22, 2002), ¶¶ 92-93 and Memorandum Opinion and Order, *In the Matter of Application by Verizon New England Inc., for Authorization To Provide In-Region, InterLATA Services in Vermont, Order Granting Application*, 17 FCC Rcd 7625 (rel. April 17, 2002), ¶¶ 56-57.  While the FCC ultimately dismissed the CLECs' complaints in both cases on other grounds, it did not indicate in any way that dark fiber was not a requirement of Checklist Item No. 5.

Regarding dark fiber entrance facilities, in the Maine 271 Approval Order when discussing Checklist Item 5, the FCC stated that it "required that BOCs provide both

dedicated and shared transport to requesting carriers." Maine 271 Approval Order, Appendix D, ¶ 53. The FCC then noted that dedicated transport included dedicated transmission facilities between "the wire centers of BOCs and requesting carriers," *i.e.* entrance facilities. *Id.* at n.448. Thus, the FCC interpreted the local transport provision of Checklist Item 5 as requiring access to entrance facilities. Furthermore, even though it has found that CLECs are not impaired without access to dark fiber entrance facilities under § 251, the FCC continues to define the term "dedicated transport" to include entrance facilities. TRRO at ¶ 137 ("In response to the court's remand, we reinstate the Local Competition Order definition of dedicated transport to the extent that it included entrance facilities, but we find that requesting carriers are not impaired without unbundled access to entrance facilities.").

Consideration of various states' 271 Approval Orders, other FCC orders, and the language of the statute itself, convinces the Court that Checklist Item 5 requires access to dark fiber transport and entrance facilities. Accordingly, Verizon is unable to demonstrate that the PUC's interpretation of Checklist Item 5 is erroneous.

### D. Whether the PUC Erroneously Interpreted the Interconnection Agreement

Lastly, Verizon challenges that part of the PUC's September 13, 2005 Order, which purports to resolve a dispute concerning the interpretation of an existing interconnection agreement between Verizon and GWI. The underlying dispute is whether the terms of the interconnection agreement require Verizon to provide § 271 network elements at rates prescribed by the PUC. The agreement requires Verizon to provide UNEs "only to the extent required by Applicable Law." Interconnection Agreement attached as Ex. F to Meehan Aff. (Docket Item No. 77), at 79, § 1.1, Network

12

Elements Attachment.  The agreement defines "Applicable Law" as "[a]ll effective laws, government regulations and government orders, applicable to each Party's performance of its obligation under this Agreement."  *Id.* at 28, § 2.8, Glossary.  The PUC interpreted the term "Applicable Law" to include its order requiring the provision of § 271 elements at TELRIC rates.[11]

Verizon first argues that "the PUC's decision violates federal law because state commissions' authority to interpret and enforce interconnection agreements is necessarily limited to provisions implementing or related to Section 251 duties."[12]  Plaintiff's Motion for Summary Judgment at 28.  Verizon, however, points to no authority for the proposition that a state commission's review of an interconnection agreement must be limited to requirements imposed by federal law.  As with Verizon's claim concerning the PUC's authority to set rates for § 271 elements, it is insufficient to point out that the TCA does not grant the PUC authority to act; Verizon must establish preemption.  *See Verizon New England*, 2005 ME 64, ¶ 19, 875 A.2d at 123.  Verizon, however, has failed to identify, and the Court has not found, any provision of the TCA or other federal law which would preempt state commissions from interpreting or enforcing terms in interconnection agreements not otherwise required by the TCA.  To the contrary, the First Circuit Court of Appeals has noted that in the TCA "Congress expressly preserved each state's authority to 'establish[] or enforc[e] other requirements of State law in [a state

---

[11] Verizon also argues that the PUC's order violates federal law because it is premised on the PUC's order requiring § 271 elements at TELRIC rates.  Because the Court has already determined that Verizon has failed to raise a trialworthy issue on their claim that these orders violate federal law, the Court will not address this argument again.

[12] Although Verizon asserts that the TCA authorizes the PUC to interpret and enforce interconnection agreements, the Court notes that there appears to be nothing in the TCA which supports this construction of the statute.  The Court does not reach this issue, however, because even assuming, *dubitante*, that Verizon is correct on this point, they have failed to demonstrate preemption.

13

commission's] review of an agreement…..'" *Global Naps, Inc. v. Massachusetts Department of Telecommunications and Energy*, 427 F.3d 34, 47 (1st Cir. 2005) (quoting 47 U.S.C. § 252(e)(3)).  In light of Verizon's failure to demonstrate that the PUC's enforcement of state mandated rates through interpretation of an interconnection agreement conflicts with federal law, Verizon's claim for preemption fails.

Verizon's other attack on the PUC's Order is that the PUC misinterpreted the interconnection agreement.  While Verizon's argument on this issue is less than clear, the Court perceives Verizon as making two distinct claims of error: (1) that the PUC's interpretation of the agreement conflicts with federal law; and (2) that the PUC's interpretation of the agreement conflicts with the language in the agreement.  The Court will address these in turn.

Verizon argues that the order conflicts with federal law because "the only law that is 'applicable,' in the context of UNEs are the FCC's decisions implementing Section 251."  Plaintiff's Motion for Summary Judgment at 29.  In support of this argument, Verizon asserts that federal law defines § 271 elements as not being "UNEs."  While it is true that § 271 does not use the term "unbundled network element" or "UNE," there is nothing in the TCA or other federal law which defines the term as limited to elements required by § 251.  Moreover, neither the TCA nor other federal law prohibits the parties to the agreement from ascribing any particular meaning whatsoever to that term.  Federal law does not provide a required or default definition for the term, and, thus, the PUC order does not conflict with federal law on this basis.

This leads naturally to Verizon's other claim of error, specifically, whether the PUC's interpretation conflicts with the agreement itself.  Before addressing this claim,

however, the Court must consider whether it has subject matter jurisdiction to do so.

In its Amended Complaint, Verizon expressly alleges jurisdiction based upon a violation of federal law. While Verizon's claim that the PUC's interpretation of the interconnection agreement conflicts with federal law clearly falls within this court's federal question jurisdiction, there is some disagreement among courts as to whether the review of a state commission's interpretation of an interconnection agreement presents a federal question. *See Verizon Maryland v. Global Naps*, 377 F.3d 355 (4th Cir. 2004); *Global Naps v. Verizon*, 332 F. Supp. 2d 341, 361-63 (D. Mass. 2004), *rev'd on other grounds* 427 F.3d 34 (1st Cir. 2005). Consequently, the Court ordered the parties to brief the issue. *See* Docket Item No. 97. Having now reviewed those briefs, the Court concludes that it need not reach the issue.

In Verizon's brief it argues that the Court may exercise supplemental jurisdiction, 28 U.S.C. § 1367, to consider the claim. *See* Plaintiff's Supplemental Brief on Jurisdiction at 17-19 (Docket Item No. 99). Although Verizon does not explicitly allege supplemental jurisdiction in its Amended Complaint, the Amended Complaint does allege sufficient facts to permit this Court to exercise supplemental jurisdiction. Furthermore, the precise basis of the Court's jurisdiction is of no consequence here as it does not affect the applicable standard of review. Although an argument can be made that, if the interpretation of an interconnection agreement is a matter of federal law, then there is no deference owed to the PUC's interpretation, both parties agree[13] that the Court

---

[13] Verizon asserts that, while determinations that rest principally on an interpretation of the TCA are subject to *de novo* review, that all other state agency determinations should be reviewed under the arbitrary and capricious standard. Plaintiff's Motion for Summary Judgment at 13-14. The PUC explicitly accepts this as the applicable standard of review. Defendants' Motion for Summary Judgment at 31.

should review the PUC's interpretation to determine if it is "arbitrary or capricious."[14] Accordingly, the Court will exercise supplemental jurisdiction to determine if the PUC's interpretation of the agreement is "arbitrary or capricious."

Having reviewed the parties' arguments and the relevant provisions of the agreement at issue, the Court concludes that the PUC's interpretation is neither arbitrary nor capricious. The PUC's Order requiring Verizon to provide § 271 elements at TELRIC rates on a temporary basis clearly falls within the term "applicable law" as that term is defined in the agreement. Furthermore, although reasonable minds could disagree as to whether the parties intended the term "UNEs" to include § 271 elements, the PUC's interpretation is not unreasonable.[15] Accordingly, Verizon is unable to demonstrate that the PUC's interpretation of the interconnection agreement is erroneous.

### III. CONCLUSION

For the reasons stated above, the Court concludes that Defendants are entitled to judgment as a matter of law. Accordingly, the Court **ORDERS** that Verizon's Motion for Summary Judgment or, Alternatively for Judgment on the Pleadings (Docket Item No. 74) be, and it is hereby, **DENIED.** Defendants' Motion for Summary Judgment (Docket Item No. 82) be, and it is hereby, **GRANTED.** In addition, the Court **ORDERS** that

---

[14] Although it need not decide, the Court assumes that under Maine Law, "arbitrary or capricious" is the applicable standard. *See Quirion v. Public Utilities Com'n* 684 A.2d 1294, 1297 (Me. 1996) (upholding PUC action which was not "arbitrary or capricious").

[15] Although Verizon argues that a separate provision of the agreement conflicts with the PUC's interpretation, the Court disagrees. The provision at issue provides, "Verizon shall have the right to establish Charges for [elements required under § 271] in a manner that differs from the manner in which under Applicable Law (including, but not limited to, Section 252(d) of the Act) Charges must be set for Services provided under Section 251." Interconnection Agreement attached as Exh. F. to Meehan Aff. (Docket Item No. 77) at 116, § 4, Pricing. The Court notes that this provision is entirely consistent with the PUC's order, as Verizon does retain the *right* to set prices for 271 elements in a manner that differs from the manner required for 251 elements. Verizon has simply failed, thus far, to exercise that right.

Verizon's Motion for Oral Argument be, and it is hereby, **DENIED**.

>*/s/ Gene Carter*
>Gene Carter
>Senior United States District Judge

Dated this 18th day of July, 2006.